UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | No. 4:07CR179 CDP |
| ROBERT C. MUZIO, | ) ) ) | |
| Defendants. | ) | |

# MEMORANDUM AND RECOMMENDATION
# OF UNITED STATES MAGISTRATE JUDGE

The above matter was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. §636(b). The Defendant filed a motion to dismiss the indictment, and a motion to suppress statements. A hearing was held on the pretrial motions on May 7, 2007.

### #15 Defendant's Motion to Dismiss Indictment

The Defendant filed a motion to dismiss the indictment in this case alleging 1) that the Sex Offender's Registration and Notification Act ("SORNA") does not apply to him because the Attorney General has not issued rules to determine how SORNA will apply to sex offenders convicted prior to the date of its enactment, such as the Defendant; 2) that the act violates the *Ex Post Facto* clause of the Constitution; and 3) that the act violates the Commerce Clause of the Constitution.

SORNA Registration

In March, 2007, the Defendant was indicted for traveling in interstate commerce between August, 2006, and December, 2006, and thereafter failing to register as a sex offender required by the Sex Offender Registration and Notification Act. The Sex Offender Registration and Notification

Act was enacted on July 27, 2006. See Pub. L. 109-248. Title I of the act created a national sex offender registry. The act, SORNA, sets out the timing and the way in which a sex offender must register under the act. In particular, SORNA contains the following requirements as to sex offender registration:

> (a) In general
>
> A sex offender shall register, and keep the registration current, in each jurisdiction where the offender resides, where the offender is an employee, and where the offender is a student. For initial registration purposes only, a sex offender shall also register in the jurisdiction in which convicted if such jurisdiction is different from the jurisdiction of residence.
>
> (b) Initial registration
>
> A sex offender shall initially register–
>
>> 1) before completing a sentence of imprisonment with respect to the offense giving rise to the registration requirement;or
>>
>> 2) not later than three business days after being sentenced for that offense, if the sex offender is not sentenced to a term of imprisonment. . .
>
> (d) Initial registration of sex offenders unable to comply with subsection (b) of this section
>
> The Attorney General shall have the authority to specify the applicability of the requirements of this subchapter to sex offenders convicted before July 27, 2006 or its implementation in a particular jurisdiction, and to prescribe rules for the registration of any such sex offenders and for other categories of sex offenders who are unable to comply with subsection (b) of this section.

42 U.S.C. § 16913. It should also be noted that SORNA requires all sex offenders to update their information including their residence within three days of any change.

Further, on February 28, 2007, the Attorney General issued an interim rule effective February 28, 2007, which stated in pertinent part:

> The requirements of the Sex Offender Registration and Notification Act apply to all sex offenders, including sex offenders convicted of the offense for which registration is required prior to enactment of that Act.

The Government states that it will prove at trial that on or about November 6, 1998, in Oklahoma state court, the Defendant pled nolo contendere to six counts of indecent and lewd acts with a child under the age of sixteen, which were felonies, and further states that it will prove that two of the victims were between the ages of three and eight when the sexual abuse occurred. At the time of the Defendant's plea and sentencing, he was informed that he was required to comply with the Sex Offender Registration Act then in existence in the State of Oklahoma by registering with the Oklahoma Department of Corrections. In August, 2005, upon his release from prison, the Defendant registered as a sex offender in the State of Oklahoma. Further, the Government will prove that the Defendant updated his registration as a sex offender on June 19, 2006. It also alleges that it will prove, as the indictment charges, that after the enactment date of the SORNA statute on July 27, 2006, in about September, 2006, the Defendant moved to the State of Missouri in the Eastern District of Missouri. Given the above information, the undersigned concludes that the Defendant's first argument must fail, even though the Defendant's requirement to register under SORNA took place before the Attorney General had adopted any rule which was delegated to him in 42 U.S.C. § 16913(d). In this regard, the case of United States v. Richard Dean Hinen, 2007 WL 1447853 (W.D. Va. May 12, 2007) is instructive and is factually the same as the case now at bar. In upholding the indictment and refusing to dismiss the indictment on these same grounds, the court stated as follows:

> The plain language of SORNA requires an offender to register, without regard to any construction of the statute by the Attorney General. The delegation provision of the statute refers to persons who, prior to the enactment of SORNA's revised standards, were not required to register by their state's registration law. See United States v. Templeton, 2007 WL 445481 (W.D. Okla. Feb. 7, 2007) (holding that § 16913(d) only applies to individuals who were unable to initially register and not to a defendant

3

who was able to register under his state's pre-SORNA law); see also United States v. Manning, 2007 WL 624037 (W.D. Ark. Feb. 23, 2007) ("A defendant can violate the law by failing to register or update a SORNA imposed registration obligation or a registration obligation imposed by another law."). Thus, the Attorney General's rule makes no difference as to the present case, as long as the government can prove that the defendant was required to register or update his registration under the existing state law of his residence.

Based on the above, the undersigned concludes that the Defendant was required to initially register and did register in the State of Oklahoma. Further, the Defendant was required to update any change of address both in the State of Oklahoma and in the State of Missouri when he moved to Missouri. See 589.400, Mo. Rev. Stat. – Sex Offenders – Registration, and 566.083, Mo. Rev. Stat. – Sexual Misconduct Involving a Child – Penalty.

Given the above, the undersigned concludes that regardless of the Attorney General's order of February 28, 2007, the Defendant was already required to register as a sex offender by state law and by SORNA. Therefore, the Defendant was able to register initially and did register initially in Oklahoma, and faced no impediment to registration in Missouri under the then-existing state law which had been in effect for at least ten years prior to his move to the State of Missouri. Therefore, the indictment should not be dismissed on this ground.

The *Ex Post Facto* Clause

The Defendant alleges that the statutory scheme of SORNA and the criminal sanctions for failing to register are punitive and violate the *Ex Post Facto* clause of the Constitution. He claims that SORNA (because of its registration requirements and penalties for failure to register) punishes

4

acts occurring before the passage of SORNA on July 27, 2006. In Smith v. Doe, 538 U.S. 84 (2003), the court upheld the constitutionality of an Alaska sex offender registration statute which is nearly identical to the provisions of the current SORNA law. In Smith, supra, the court held that if the Legislature's intent was to impose a regulatory or civil scheme for registration of sex offenders, then the law did not violate the *Ex Post Facto* clause even if its provisions were retroactive. If its provisions were punitive in nature, however, the court held that the clause would be violated. Congress stated its intent in enacting SORNA by stating as follows:

> In order to protect the public from sex offenders and offenders against children and in response to vicious attacks by violent predators, Congress in this chapter establishes a comprehensive national system for registration of sex offenders.

Title 42 U.S.C. § 16901.

Thus, as can be seen from above, Congress's intent was to enact a public safety or regulatory statute which ensured that sex offenders would be required to register and update their registration in a uniform manner wherever they might reside. In Smith, supra, the court also analyzed the effect of the Alaska statute and stated that the effect as well as the intent of the Legislature in enacting the statute must also be non-punitive. In holding that SORNA, because of its similarity to the Alaska statute, was constitutional, the Court in United States v. Hinen, 2007 WL 1447853 (W.Va. May 12, 2007) stated as follows:

> Having now decided it was Congress's intent that the statutory scheme at issue be non-punitive, I must now determine whether its effect or purpose actually negates Congress's intent that it be non-punitive. Based on Smith, I find that it does not. "Only the clearest proof will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty." *Id*. at 92. After evaluating several factors to determine whether the effects of a sex offender registration requirement were unduly punitive, the Smith court concluded that sex offender registration requirements are not so punitive as to negate the legislature's intent that they be non-punitive. Undertaking a similar analysis is unnecessary in this case since the effects of the federal registration requirements are nearly identical

5

> compared to those involved in the Alaska statutory scheme at issue in Smith, I am bound to follow Smith's conclusion that the effects of the sex offender registration requirement do not negate the legislative intent, and that such registration requirements be non-punitive. Accordingly, as applied to the defendant, the present statutory scheme is not a violation of the *ex post facto* clause."

2007 WL 1447853 *8. See also, United States v. Derrick Mason, 2007 WL 1521515 (M.D. Fla., May 26, 2007); United States v. Markel, 2007 WL 1100416 (W.D. Ark., Apr. 11, 2007); United States v. Templeton, 2007 WL 445481 (W.D. Okla. Feb. 7, 2007); United States v. Madera, 474 F.Supp.2d 1257, 1264 (M.D. Fla. 2007). (All of the above cases hold that SORNA does not violate the *Ex Post Facto* clause.)

In addition, the undersigned concludes that the Failure to Register provision, 18 U.S.C. § 2250, does not punish the Defendant for an act that was not criminal when it was committed. The Government states that it will prove that the Defendant's travel in interstate commerce as well as the Defendant's failure to register occurred after the enactment of the criminal statute in this case, and not before its enactment. Therefore, the act, as applied in this case, does not punish the Defendant for a crime that was committed before the date of the enactment of the statute nor does it deprive the Defendant of a defense available at the time the act was committed. See Collins v. Youngblood, 496 U.S. 37, 52 (1990). Therefore, the undersigned concludes that the indictment should not be dismissed on this ground.

Commerce Clause

The Defendant also alleges that the criminal statute, 18 U.S.C. § 2250, violates the Commerce Clause because it fails to establish a constitutionally sufficient nexus to the regulation of interstate commerce. The power to regulate commerce between the states includes the power to regulate:

1) " the use of the channels of interstate commerce;"

2) "the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities;"

3) "those activities having a substantial relation to interstate commerce. . ."

United States v. Lopez, 514 U.S. 549, 558-59 (1995).

The statute in the case at bar does not regulate intrastate registration of sex offenders but rather requires that in order for a person to be criminally liable, the person must "travel in interstate or foreign commerce, or enter or leave or reside in Indian country, and thereafter fail to register as required by the sex offender act." See 18 U.S.C. § 2250(a)(2)(B). The statute is based on the second prong of Lopez, the ability to regulate persons or things or instrumentalities in interstate commerce. In holding that the statute did not violate the Commerce Clause on this basis, the court stated as follows in United States v. Hinen, supra:

> The jurisdictional element involved in FFR both distinguishes it from the statutes at issue in *Lopez* and *Morrison* and satisfies the requirements of the Commerce Clause. *See United States v. Cobb*, 144 F.3d 319, 321-22 (4th Cir. 1998) (rejecting *Lopez* challenge to federal carjacking statute because it contained a jurisdictional element requiring the vehicle to have been transported in interstate commerce); *United States v. Wells*, 98 F.3d 808, 810-11 (4th Cir. 1996) (rejecting *Lopez* challenge to 18 U.S.C.A. 922 (g) because a commerce nexus was shown by the statute's requirement that the defendant received a gun shipped or transported in interstate commerce).
>
> Because Congress has established a jurisdictional predicate of interstate or foreign travel, the government need only establish a de minimis effect on interstate commerce. Similar to the federal carjacking statute and the Hobbs Act, FFR has at least a de minimis effect on interstate travel, because it involves the travel of certain persons across state lines. Accordingly, FFR is a proper exercise of congressional authority under the Commerce Clause.

United States v. Hinen, 2007 WL 1447853 *9.

Therefore, based on the above law, the undersigned concludes that the statute contains a sufficient nexus to interstate commerce, and that the indictment should not be dismissed on this

ground. See also, United States v. Templeton, supra; United States v. Mason, supra, (both holding that 18 U.S.C. § 2250 does not violate the Commerce Clause).

Therefore, for all of the above reasons and as to each ground, the Defendant's motion to dismiss the indictment should be denied.

**#16 Defendant's Motion to Suppress Statements**

Based upon the evidence adduced at the hearing on the pretrial motions, the undersigned makes the following findings of fact and conclusions of law:

**Findings of Fact**

Manuel Silva is a detention officer employed by the United States Marshals Service in the Eastern District of Missouri. His duties include the booking of prisoners arrested by United States Marshals. On December 21, 2006, Deputy Silva booked the Defendant Muzio into the lockup facility of the Thomas Eagleton Courthouse. He had been arrested earlier that day by other deputies of the United States Marshals Service for violating the conditions of his supervised release. The warrant for his arrest was issued by a judge in the Eastern District of Oklahoma. Deputy Silva followed exactly the same process in booking the Defendant that he followed on all individuals arrested by the United States Marshals Service. He did this by electronically filling out the United States Marshals personal history of the Defendant by asking Muzio his name, date of birth, age, place of birth, sex, height, weight, marital status, address, and social security number. In providing this information, Muzio gave his address as 2071 Victorian Village Drive in St. Louis, Missouri. After the Defendant was indicted on the current charges, Deputy Silva updated the booking information on March 16, 2007. He did this by asking the Defendant if any of the information had changed since his prior booking. The Defendant stated that nothing was different. Silva did not advise the Defendant of his

8

rights because he was asking him only questions for booking information, and did not ask him anything about the underlying charges (violations of conditions supervised release).

Deputy U.S. Marshal Robert O'Connor also interviewed the Defendant on December 21, 2006. He interviewed the Defendant in the cellblock of the jail shortly after he was booked by Silva. Prior to interviewing the Defendant, he advised the Defendant of his rights by using an advice of rights and waiver of rights form. He advised the Defendant of his rights by reading to him from the form and having the Defendant read along with him. In this manner, O'Connor advised the Defendant of his full <u>Miranda</u> rights, and asked him if he understood his rights. The Defendant stated he understood his rights, and signed the portion of the form stating that he had read the statement of his rights and understood his rights. O'Connor then read the waiver of rights portion of the form to the Defendant, and the Defendant read along with him. After reading this portion, the Defendant stated he wanted to waive his rights and talk to O'Connor and signed the waiver section of the form. The interview of the Defendant lasted for about ten minutes, however, when O'Connor asked the Defendant how he came to be driving the car in which he was arrested in St. Louis, the Defendant stated he did not want to answer any more questions and said he wanted to talk to a lawyer. O'Connor immediately ceased questioning the Defendant and returned him to his cell.

**Conclusions of Law**

<u>Statements Made During the Booking Process</u>

As to the statements made during the booking process, the undersigned concludes that these statements should not be suppressed. These statements merely contain the Defendant's pedigree and biographical information. Courts have held that the taking of basic biographical information such as booking information at the time of a defendant's arrest is a ministerial function and does not

9

constitute interrogation. Therefore, the courts have held that the taking of this information from a person in custody does not implicate the defendant's Miranda rights, and that the taking of this information does not require that the defendant knowingly be informed of or waive his rights in any way. See United States v. Brown, 101 F.3d 1272 (8th Cir. 1996); United States v. Feldman, 788 F.2d 544 (9th Cir. 1986).

In addition, the undersigned concludes that the statement made to Deputy O'Connor should not be suppressed. As stated above, the Defendant was fully advised of his rights in writing from a written advice of rights and waiver form. The Defendant was read his rights by O'Connor, and was allowed to read along with O'Connor. After being read his rights, the Defendant stated he understood his rights and signed the section of the form stating that he understood the rights. In addition, the Defendant was read the waiver language on the form, and stated that he wished to waive his right to remain silent and his other rights, and agreed to talk to the deputy. In addition, there is no evidence that the Defendant was threatened in any way nor was he promised anything in order to briefly talk to O'Connor. In fact, the record indicates that O'Connor scrupulously honored the Defendant's rights, and as soon as the Defendant indicated that he wished to talk to an attorney, the interview ceased.

Therefore, the undersigned concludes that the Defendant was fully informed of his rights, waived his rights, and his statement was voluntarily made. See Miranda v. Arizona, 384 U.S. 436, 467-75 (1966); North Carolina v. Butler, 441 U.S. 369, 374-75 (1979); Colorado v. Connelly, 479 U.S. 157 (1986); Moran v. Burbine, 475 U.S. 412 (1985). Therefore, the undersigned concludes the statements should not be suppressed.

## Conclusion

Therefore, the undersigned concludes that the Defendant's motion to suppress statements should be denied.

\* \* \*

In accordance with the Memorandum above,

**IT IS HEREBY RECOMMENDED** that (Doc. #15) Defendant's Motion to Dismiss Indictment, and (Doc. #16) Defendant's Motion to Suppress Statements be **denied**.

Further, the parties are advised that they have until **June 15, 2007**, in which to file written objections to this recommendation and determination. Failure to timely file objections may result in waiver of the right to appeal questions of fact. Thompson v. Nix, 897 F.2d 356, 357 (8th Cir. 1990).

Finally,

The trial of this matter is set on **July 2, 2007** at **9 a.m.** before the Honorable Catherine D. Perry, United States District Judge, Courtroom 14-South.

                                                   /s/ Terry I. Adelman  
                                          UNITED STATES MAGISTRATE JUDGE

Dated this 4th day of June, 2007.