UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:07CR179 CDP |
| ) | |
| ROBERT C. MUZIO, ) | |
| ) | |
| Defendant. ) | |

# **MEMORANDUM AND ORDER**

Defendant Robert C. Muzio is charged by indictment with knowingly failing to register as a sex offender after he traveled in interstate commerce. The government expects its evidence to show that Muzio was convicted of a sex offense in Oklahoma state court in 1998. He was released from prison in 2005 and registered as a sex offender as required by Oklahoma law. He updated his Oklahoma registration in June of 2006. According to the government, in September 2006 Muzio moved to Missouri, but he did not notify Oklahoma, nor did he register in Missouri. On March 15, 2007, Muzio was indicted for violating 18 U.S.C. § 2250 by traveling in interstate commerce between August, 2006, and December, 2006, and knowingly failing to register as a sex offender as required by § 113 of the Sex Offender Registration and Notification Act (SORNA), codified at 42 U.S.C. § 16913.

Defendant filed motions to dismiss the indictment and to suppress his post-arrest statements. I referred the motions to United States Magistrate Judge Terry I. Adelman under 28 U.S.C. § 636(b). Judge Adelman held an evidentiary hearing and thereafter filed his Report and Recommendation, which recommended that both motions be denied. Defendant objected to the Magistrate Judge's Recommendations, and because of the significant legal question presented by the motion to dismiss, I heard oral argument on the issue. Both counsel have done an excellent job of presenting and arguing this difficult question.

I have conducted de novo review of the motions, including listening to the recording of the hearing before Judge Adelman. While I conclude that his recommendation on the suppression motion is correct, I do not agree with his recommendation regarding the motion to dismiss. Instead, I conclude that the indictment in this case must be dismissed, because this defendant, at the time of his alleged criminal act, was not covered by SORNA, and so its application to him violates the Ex Post Facto Clause of the United States Constitution.

**Discussion**

Muzio filed a motion to dismiss the indictment, arguing (1) that SORNA does not apply to him because, at the time he traveled to Missouri, the Attorney General had not yet issued rules to determine how SORNA would apply to sex

offenders like Muzio convicted before the date of its enactment; (2) that the act violates the Ex Post Facto clause of the Constitution; and (3) that the act violates the Commerce Clause of the Constitution.

### A. Statutory Construction

Title 18 U.S.C. § 2250 provides:

**§ 2250. Failure to Register**

**(a) In general** – Whoever–

> (1) is required to register under the Sex Offender Registration and Notification Act;
>
> (2)(A) is a sex offender as defined for the purposes of the Sex Offender Registration and Notification Act by reason of a conviction under Federal law (including the Uniform Code of Military Justice), the law of the District of Columbia, Indian tribal law, or the law of any territory or possession of the United States; or
>
> (B) travels in interstate or foreign commerce, or enters or leaves, or resides in, Indian country; and
>
> (3) knowingly fails to register or update a registration as required by the Sex Offender Registration and Notification Act;

shall be fined under this title or imprisoned not more than 10 years, or both.

18 U.S.C. § 2250(a).

The Sex Offender Registration and Notification Act was enacted on July 27,

2006.  See Pub. L. 109-248.  Title I of the Act created a national sex offender registry and sets out the timing and the way in which a sex offender must register under the act.  In particular, SORNA contains the following registration requirements:

> **(a) In general**
>
> A sex offender shall register, and keep the registration current, in each jurisdiction where the offender resides, where the offender is an employee, and where the offender is a student. For initial registration purposes only, a sex offender shall also register in the jurisdiction in which convicted if such jurisdiction is different from the jurisdiction of residence.
>
> **(b) Initial registration**
>
> A sex offender shall initially register-
>
> 1) before completing a sentence of imprisonment with respect to the offense giving rise to the registration requirement; or

2) not later than three business days after being sentenced for that offense, if the sex offender is not sentenced to a term of imprisonment.

. . . .

> **(d) Initial registration of sex offenders unable to comply with subsection (b) of this section**
>
> *The Attorney General shall have the authority to specify the applicability of the requirements of this subchapter to sex offenders convicted before July 27, 2006* or its implementation in a particular jurisdiction, and to prescribe rules for the registration of any such sex offenders and for other categories of sex offenders who are unable to comply with subsection (b) of this section.

42 U.S.C. § 16913 (emphasis added). SORNA also requires all sex offenders to update their information including their residence within three days of any change. See 42 U.S.C. § 16913(c).

On February 28, 2007, the Attorney General issued an interim rule effective February 28, 2007, which states in pertinent part:

> The requirements of the Sex Offender Registration and Notification Act apply to all sex offenders, including sex offenders convicted of the offense for which registration is required prior to enactment of that Act.

72 Fed. Reg. 8894, 2007 WL 597891 (to be codified at 28 C.F.R. § 72.3).

Muzio was convicted of a sex offense before the enactment of SORNA (July 27, 2006). Muzio traveled to Missouri after SORNA's enactment (August to December 2006), but before the Attorney General issued the interim regulation (February 28, 2007). The Attorney General had issued the interim rule before Muzio was indicted (March 15, 2007), but after he traveled. The statutory construction question presented is whether SORNA applies to a defendant who was convicted before the date of the Act and then traveled and failed to register during the gap in time between the statute's enactment and the Attorney General's rule stating that the act applies to persons whose convictions predate SORNA.

Muzio argues that SORNA's registration requirement cannot apply to those

persons convicted before SORNA's enactment who traveled and failed to register before the Attorney General's rule. The government argues that § 113(d) and the Attorney General's rule simply do not apply to Muzio; it urges that those provisions apply only to prior sex offenders who were not able to *initially* register within the time limits specified by the act. Judge Adelman agreed with the government that SORNA applied to Muzio because Muzio had already "initially" registered as a sex offender in Oklahoma before the July 27, 2006, enactment date.

    I am aware of four SORNA cases that have considered whether the statute could be applied to a defendant such as Muzio who was convicted before July 27, 2006 and who traveled and failed to register during the time period between the effective date of the act and the Attorney General's February 28, 2007, interim rule. In two of those cases, the District Courts held, as did Judge Adelman here, that SORNA applied: United States v. Mason, 2007 WL 1521515 (M.D. Fla. May 22, 2007), and United States v. Hinen, 2007 WL 1447853 (W.D. Va. May 12, 2007). In the other two cases the Courts held that SORNA could not apply to a defendant falling within this "gap" situation: United States v. Marvin Smith, 2007 WL 1725329 (S.D. W.Va. June 13, 2007), and United States v. Kapp, 487 F. Supp. 2d 536 (M.D. Pa. 2007).

Additionally, four published cases have found no constitutional or other problem with charging a defendant with a crime under SORNA where the defendant both incurred his predicate sex conviction and traveled without registering before the date of the act. See United States v. Madera, 474 F. Supp. 2d 1257 (M.D. Fla. 2007); United States v. Markel, 2007 WL 1100416 (W.D. Ark. April 11, 2007); United States v. Hinen, 2007 WL 1447853 (W.D. Va. May 12, 2007); United States v. Manning, 2007 WL 624037 (W.D. Ark. Feb. 23, 2007); United States v. Templeton, 2007 WL 445481 (W.D. Okla. Feb. 7, 2007).[1] One case, United States v. Bobby Smith, 481 F. Supp. 2d 846 (E.D. Mich. 2007), concluded that the statute does not apply where both the prior conviction and the travel took place before the effective date of the statute.

The problem with the government's argument is that it ignores the ordinary rules of statutory construction. Under the plain language of the statute, the registration requirements of § 113(a) have only prospective applicability until the Attorney General acted pursuant to § 113(d). Section 113(d) unequivocally authorizes the Attorney General to "specify the applicability" of SORNA to offenders who, like Muzio, were convicted of predicate sex offenses before

---

[1] At oral argument the government indicated that there were two other Western District of Oklahoma cases that had followed Templeton.

SORNA's effective date of July 27, 2006. "A fundamental canon of statutory construction is that, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning." Perrin v. United States, 444 U.S. 37, 42 (1979). Only the title raises any question about § 113(d)'s meaning. But a title does not make a statute ambiguous when the words are plain: "section and subchapter titles cannot alter the plain meaning of a statute; they can only assist in clarifying ambiguity." Minnesota Transp. Regulation Board v. United States, 966 F.2d 335, 339 (8th Cir. 1992) (citing Brotherhood of Railroad Trainmen v. Baltimore & Ohio R.R., 331 U.S. 519, 528-29 (1947)). See also Reed v. Sturdivant, 176 F.3d 1051, 1053 n.4 (8th Cir. 1999) ("Headings are usually given little weight in construing a statute but may be used to clarify an ambiguity."). The Supreme Court has discussed the effect of section titles on statutory interpretation:

> That the heading of [the section] fails to refer to all the matters which the framers of that section wrote into the text is not an unusual fact. That heading is but a short-hand reference to the general subject matter involved.... [H]eadings and titles are not meant to take the place of the detailed provisions of the text. Nor are they necessarily designed to be a reference guide or a synopsis. Where the text is complicated and prolific, headings and titles can do no more than indicate the provisions in a most general manner; to attempt to refer to each specific provision would often be ungainly as well as useless. As a result, matters in the text which deviate from those falling within the general pattern are frequently unreflected in the headings and

> titles. Factors of this type have led to the wise rule that *the title of a statute and the heading of a section cannot limit the plain meaning of the text*. For interpretive purposes, they are of use only when they shed light on some ambiguous word or phrase. They are but tools available for the resolution of a doubt. But they cannot undo or limit that which the text makes plain.

Brotherhood of Railroad Trainmen, 331 U.S. at 528-29 (citations omitted) (emphasis added).

Because the title, "Initial registration of sex offenders unable to comply with subsection (b) of this section," is not part of the statute, it was error for Judge Adelman and for the Hinen, Templeton and Manning courts to rely on it as evidence that SORNA applied to sex offenders convicted before July 27, 2006 when it was passed. Instead, I am persuaded by the reasoning of the Middle District of Pennsylvania in United States v. Kapp. In considering this issue, the Kapp court concluded that "a careful reading of § 113(d) reveals that its reach extends beyond establishing the means by which unregistered sex offenders must first register." Kapp, 487 F. Supp. 2d at 542. As the district court explained:

> Section 113(d) comprises two clauses. The first clause, as already discussed, authorizes the Attorney General to 'specify the applicability' of SORNA to past offenders. The second clause authorizes the Attorney General to promulgate regulations related to the registration of sex offenders under SORNA. Although the first clause speaks to 'sex offenders convicted before the enactment of this Act or its implementation in a particular jurisdiction,' the second clause provides authority to promulgate regulations 'for the

> registration of any such [previously convicted] sex offenders and for
> other categories of sex offenders who are unable to comply with
> subsection (b).' The words 'any such' and 'other categories' in the
> second clause indicate that § 113(d) contemplates two groups of sex
> offenders: (1) past offenders and (2) those unable to initially register
> under subsection (b). Significantly, the first clause of § 113(d), which
> addresses SORNA's applicability, only covers the first group: past
> offenders. Therefore, when the two clauses are read in conjunction,
> the first clause of § 113(d) unambiguously provides the Attorney
> General with the authority to define the retrospective applicability of
> SORNA's registration requirements to past offenders.

Id. I find this reasoning persuasive. Like the Kapp court, I can find no ambiguity in the statutory language at issue and am bound to apply the law as written, without regard to the subsection's title.[2] For this reason, I find that SORNA did not apply to Muzio *at the time of travel* charged in the indictment. Accord Marvin Smith, 2007 WL 1725329 at *4 (finding further support for this conclusion in the Department of Justice Guidelines that have now been proposed).

The courts that have agreed with the government on this argument do not appear to have followed the normal rules of statutory construction. For example, in Mason the Court discussed the argument as being that the statute violated the

---

[2]For the same reason, I cannot rely on the legislative history cited by the government, as a court should only look to legislative history to help interpret an ambiguous statute. In any event, the legislative history does not support the government's argument because it does not speak at all about the subsection in question or about retrospective application – instead it simply talks about the problem to be addressed by the statute. In this regard the statute is no different than any other criminal law passed by Congress that addresses an emerging or recently recognized societal problem. Recognition that the problem existed before its criminalization is the norm; retroactivity – unless explicitly stated – is not the norm.

non-delegation doctrine, but did not discuss the meaning of the first clause of subsection (d). It found no violation of the non-delegation doctrine, and then concluded that because Mason had been advised of his duty to register under New York law, the statute applied to him. The court gave no discussion to the meaning and ambiguity or lack of ambiguity of the statutory language. Similarly, in <u>Hinen</u>, relied on by Judge Adelman, the court found that the plain language of the statute required all sex offenders to register, and cited <u>Templeton</u> for its rejection of statutory construction to the contrary. But <u>Templeton</u> relied entirely on the title of the subsection without ever finding that the language was ambiguous: "The Court finds that this title clearly indicates that this subsection only applies to individuals who were unable to initially register as a sex offender." 2007 WL 445481 at *4. This is exactly the type of statutory construction that the Supreme Court has said is improper. I need not look to the title because there is no ambiguity in the statute.

### B. Ex Post Facto Clause

My conclusion that the law did not apply to Muzio at the time of his alleged crime does not end the inquiry. Because the Attorney General's rule makes it "indisputably clear that SORNA applies to sex offenders (as the Act defines that term) regardless of when they were convicted,"[3] the question remains whether the

---

[3] 72 Fed. Reg. 72 Fed. Reg. 8894, 2007 WL 597891 (to be codified at 28 C.F.R. § 72.3).

act can now be applied to prosecute Muzio even though it did not apply at the time of his alleged crime of travel and failure to register. As discussed above, SORNA did apply to Muzio at the time of indictment on March 15, 2007, because by then the Attorney General had issued the rule. I conclude that Muzio's "gap" situation presents a classic Ex Post Facto Clause violation, although I agree with the government that there is no constitutional problem with prosecuting persons other than those who traveled and failed to register during the gap. In other words, because the criminal act is traveling and failing to register, the law cannot constitutionally be applied to Muzio, because those things were not crimes covered by this act when he did them. This does not mean that the act is unconstitutional as applied to all sex offenders convicted before the date of the act – it is only unconstitutional when applied to those previously-convicted persons who traveled before the Attorney General's rule.

Article I, Section 9, subsection (3) of the United States Constitution states, "No Bill of Attainder or ex post facto law shall be passed." The Supreme Court has summarized the ex post facto doctrine:

> The ex post facto prohibition forbids the Congress and the States to enact any law which *imposes a punishment for an act which was not punishable at the time it was committed; or imposes additional punishment* to that then prescribed . . . . The ban also restricts governmental power by restraining arbitrary and potentially

> vindictive legislation.
>
> In accord with these purposes, our decisions prescribe that two critical elements must be present for a criminal or penal law to be ex post facto: it must be retrospective, that is, it must apply to events occurring before its enactment, and it must disadvantage the offender affected by it.
>
> . . . . .
>
> Critical to relief under the Ex Post Facto Clause is not an individual's right to less punishment, but the lack of fair notice and governmental restraint when the legislature increases punishment beyond what was prescribed when the crime was consummated. Thus, even if a statute merely alters penal provisions accorded by the grace of the legislature, it violates the Clause if it is both retrospective and more onerous than the law in effect on the date of the offense.

Weaver v. Graham, 450 U.S. 24, 28-31 (1981) (quotation marks and citations omitted) (emphasis added). Although Muzio's travel occurred after the enactment date of the statute, SORNA is still being unconstitutionally applied to him because SORNA did not apply to Muzio at the time he traveled and failed to register, and its application disadvantages him.

I believe that the district courts in Manning, Templeton, and Madera, which all held that the law could cover pre-enactment travel, failed to distinguish between sex offense convictions that occurred before SORNA and travel and failing to register before SORNA. This temporal distinction is crucial, because in

- 13 -

Smith v. Doe, 538 U.S. 84 (2003), the Supreme Court held that Alaska's law requiring previously-convicted sex offenders to register was constitutional, even though that was not a requirement at the time of their convictions. The Court reasoned that the Alaska act was non-punitive and civil in nature, and therefore did not violate the Ex Post Facto Clause. SORNA clearly fits within this ruling, and under Smith v. Doe, there is no constitutional problem with SORNA's general requirement that persons convicted before its effective date must register as sex offenders and must keep their registration current. The criminal consequences only occur if person required to register fails to do so; the act of failing to register is the criminal act, and so it is the timing of that act, not the timing of the qualifying conviction, that raises Ex Post Facto Clause concerns.

In United States v. Bobby Smith, 481 F. Supp. 2d 846 (E.D. Mich. 2007), the district court in Michigan concluded that SORNA, as a matter of statutory construction, did not apply to travel that occurred before its enactment. The Court went on to hold that the Ex Post Facto Clause would be violated if the statute applied to such travel. The Court first noted that "it is undisputed that § 2250, the felony statute (10-year maximum) enacted in July 2006, increases the federal penalty for failure to register as a sex offender from that previously set by § 14072(I), a one-year incarceration for a first-time offender." Id. at 851. The court

- 14 -

found, and I agree, that Smith v. Doe does not control the result here, because the Supreme Court simply held that the registration requirements were civil procedures, and were not additional punishment. In contrast, the Bobby Smith court concluded "that the instant legislation, with its increased felony punishment placed in Title 18 [of the Federal Code: Crimes and Criminal Procedure], does violate the ex post facto clause, *insofar as the Government seeks to apply it to a defendant who traveled in interstate commerce prior to July 27, 2006 . . . ."* 481 F. Supp. 2d at 853 (emphasis added). The Bobby Smith court distinguished the Supreme Court's decision as follows:

> The Supreme Court did not reach the question in the instant case-i.e., whether the Government can create enhanced criminal penalties (§ 2250), in the criminal provisions of the legislative code, and apply them to an individual who traveled in interstate commerce before the effective date of the Act. The Government's attempt to hide the enhanced penalties in § 2250 under the greater "civil" purpose of SORNA runs afoul of the longstanding rule that "the ex post facto effect of a law cannot be evaded by giving a civil form to that which is essentially criminal." Burgess v. Salmon, 97 U.S. 381, 385, 7 Otto 381, 24 L.Ed. 1104 (1878); see Collins v. Youngblood, 497 U.S. 37, 46, 110 S.Ct. 2715, 111 L.Ed.2d 30 (1990) ("[T]he ex post facto prohibition is addressed to laws, whatever their form, which make innocent acts criminal, alter the nature of the offense, or increase the punishment").

Id. at 853. Although the travel in Bobby Smith occurred before the passage of SORNA, the same reasoning would apply in this case because the statute was not

applicable to Muzio until February 28, 2007. SORNA would violate the Ex Post Facto Clause if applied to Muzio in this case because the statute increases the penalty for his travel and failure to register before February 28, 2007, the date the statute first applied to him.

### C. Commerce Clause Challenge

Although it is not necessary for me to decide this issue, I conclude that Judge Adelman correctly decided that SORNA does not violate the Commerce Clause, and so I will adopt that portion of his Report and Recommendation.

### Conclusion

Under the plain language of the statute as it existed at the time of Muzio's alleged crime, the statute does not apply to him. The statute unambiguously says that the Attorney General had the authority to specify the applicability of the statute to sex offenders convicted before SORNA's enactment, and that did not happen until after Muzio is alleged to have traveled and failed to register. Application of the act to him for conduct that occurred during the gap in time between July 27, 2006 and February 28, 2007 violates the Ex Post Facto Clause of the United States Constitution. I must grant the defendant's motion to dismiss.

Accordingly,

**IT IS HEREBY ORDERED** that the Report and Recommendation of Magistrate Judge Adelman [#20] is adopted in part only.

**IT IS FURTHER ORDERED** that defendant's motion to suppress statements [#16] is denied.

**IT IS FURTHER ORDERED** that defendant's motion to dismiss the indictment [#25] is GRANTED.

                                              _____
                                              CATHERINE D. PERRY
                                              UNITED STATES DISTRICT JUDGE

Dated this 26th day of July, 2007.